1
2
3
4
5

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ABHIJIT BAGAL, an individual,<br><br>              *Plaintiff,*<br>     v.<br><br>KSHAMA SAWANT, in her official and individual capacities as Councilmember, District 3, of the Seattle City Council;<br>LISA HERBOLD, in her official and individual capacities as Councilmember, District 1, of the Seattle City Council; and<br>BRUCE HARRELL, in his official and individual capacities as the Mayor of the City of Seattle,<br><br>              *Defendants.* | Civil Action No. 2:23-cv-00721-RAJ<br><br>Action Filed: May 11, 2023<br><br>Judge: Hon. Richard A. Jones<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(1) and 12(b)(6)**<br><br>[***Filed Concurrently with PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE***] |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................... 10

II.    FACTUAL BACKGROUND ............................................................. 13

   A.   Defendants describe Caste as synonymous with Hinduism in a demeaning manner with a discriminatory and hostile intent........................................................ 14

   B.   Defendants have Discriminatory Animus and an Invidious Motive................................ 16

III.   STATEMENT OF ISSUES ............................................................... 17

IV.    LEGAL ARGUEMENTS ................................................................. 18

   A.   Defendants' disregard Plaintiffs' well-pled allegations................................... 19

   B.   Plaintiff has Credible Standing ............................................................ 20

   C.   Impact on Core Constitutional Rights.................................................... 24

   D.   The Ordinance is Unconstitutionally Vague........................................... 24

   E.   The Ordinance Violates the Equal Protection Clause...................................... 28

   F.   The Ordinance Violates the Establishment Clause ........................................ 31

   G.   The Ordinance Violates the Free Exercise Clause........................................ 33

   H.   Plaintiff asserts a Proper Facial Challenge. ............................................. 35

   I.   Plaintiff should be permitted to amend the Complaint. ................................... 37

V.     CONCLUSION................................................................................ 37

VI.    LOCAL CIVIL RULE CERTIFICATION ...................................... 38

VII.   CERTIFICATION AND CLOSING .............................................. 38

VIII.  CERTIFICATE OF SERVICE ....................................................... 39

*Pro Se 15 2016*                                                    Hon. Richard A. Jones

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Adarand Constructors, Inc. v. Pena,*
    515 U.S. 200 (1995)..................................................................... 19, 29

*Ashcroft v. Iqbal,*
    556 U.S. 678 ......................................................................... 18, 19

*Bagget v. Bullitt,*
    377 US 360 (1964)............................................................................. 11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................. 17, 19, 21

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 US 388 (1971) ............................................................................ 18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993)..................................................................... 33, 34

*City of Los Angeles v. Patel,*
    576 U.S. 409 (2015)......................................................................... 36

*Cramp v. Board of Public Institution,*
    368 U.S. 278 (1961) ......................................................................... 25

*Epperson v. Arkansas,*
    393 U.S. 97 (1968)........................................................................... 31

*Everson v. Bd. of Ed. of Ewing Twp.,*
    330 U.S. 1 (1947)............................................................................ 32

*Fisher v. Univ. of Tex.,*
    570 U.S. 297 (2013) ........................................................................ 29

*Gomez v Toledo,*
    446 US 635 (1980)........................................................................... 18

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972).................................................................... 11, 24

*Hill v. Colorado,*
    530 U.S. 703 (2000)......................................................................... 24

*Jett v. Dallas Indep. Sch. Dist.,*
    491 U.S. 701 (1989) ........................................................................ 29

*Pro Se 15 2016*                                                           Hon. Richard A. Jones

*Johnson v. Calif.,*
543 U.S. 499 (2005) ................................................................................... 29

*Johnson v. U.S.,*
        576 U.S. 591 (2015) ........................................................................... 25

*Kennedy v. Bremerton School Dist.,*
        142 S. Ct. 2407 (2022) ....................................................................... 33

*Larson v. Valente,*
        456 U.S. 228 (1982) ........................................................................... 31

*Lemon v. Kurtzman,*
        403 U.S. 602 (1971) ........................................................................... 33

*Lujan v. Defenders of Wildlife,*
        504 U.S. 555 (1992) ........................................................................... 21

*Lynch v. Donnelly,*
        465 U.S. 668 (1984) ........................................................................... 33

*Masterpiece Cakeshop Ltd. v. Colo. C.R. Comm'n,*
        138 S.Ct. 1719 (2018) ........................................................................ 33

*Medimmune, Inc. v. Genentech, Inc.,*
        549 U.S. 118 (2007) ........................................................................... 22

*Plyler v. Doe,*
        457 U.S. 202 (1982) ........................................................................... 28

*Regents of University of California v.Bakke,*
        438 U.S. 265 (U.S. 1978) .................................................................... 30

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
        141 S. Ct. 63 (2020) ........................................................................... 35

*Romer v. Evans,*
        517 U.S. 620 (1996) ........................................................................... 28

*Sessions v. Dimaya,*
        138 S. Ct. 1204 (2018) ....................................................................... 11

*Smith v. Goguen,*
        415 U.S. 566 (1974) ...................................................................... 24, 26

*Sunday Lake Iron Co. v. Wakefield Twp.,*
        247 U.S. 350 (1918) ........................................................................... 28

*Warth v. Seldin,*
   422 U.S. 490 (1975).................................................................. 20

**FEDERAL CASES**

*Adair v. England,*
   183 F.Supp.2d 31 (D.D.C. 2002)............................................ 31

*Aguayo v. U.S. Bank,*
   653 F.3d 912 (9th Cir. 2011) ............................................. 10, 17

*Al Saud v. Days,*
   50 F.4th 705 (9th Cir. 2022) ................................................. 29

*Alaska v. EEOC,*
   564 F.3d 1062 (9th Cir. 2009) .............................................. 28

*Arce v. Douglas,*
   793 F.3d 987 ......................................................................... 20

*Ariz. Right to Life PAC v. Bayless,*
   320 F.3d 1002 (9th Cir. 2003) .............................................. 36

*Ball v. Massanari,*
   254 F.3d 817 (9th Cir. 2001) ........................................... 29, 30

*Benezet Consulting LLC v. Secretary Commw of Pennsylvania,*
   26 F.4th 580 (3d Cir. 2022) .................................................. 36

*Butler v. Resurgence Financial, LLC,*
   521 F. Supp. 2d 1093 (C.D. Ca. 2007) ................................. 18

*Cal. Pro-Life Council, Inc. v. Getman,*
   328 F.3d 1088 (9th Cir. 2003) .............................................. 36

*California Parents for Equalization of Educational Materials (CAPEEM) v. Torlakson,*
   973 F.3d 1010 (9th Cir. 2020) .............................................. 32

*California Teachers Ass'n v. State Bd. of Educ.,*
   271 F.3d 1141 (9th Cir. 2001) .............................................. 36

*Coszalter v. City of Salem,*
   320 F.3d 976 ......................................................................... 23

*Council of Ins. Agents & Brokers v. Molasky-Arman,*
   522 F.3d 925 (9th Cir. 2008) ................................................ 22

*Ctr. v. Mendocino Cnty.,*
     192 F.3d 1283 (9th Cir. 1999) ........................................................ 22

*D.W. v. Raufer,*
     839 F. App'x 723 (3d Cir. 2020) ..................................................... 24

*Doe v. City of San Diego,*
     313 F. Supp. 3d 1212 (S.D. Ca. 2018) ............................................ 36

*Duronslet v. Cnty. of Los Angeles,*
     266 F. Supp. 3d 1213 (C.D. Cal. 2017) ............................................ 19

*Fed. Deposit Ins. Corp. v. Henderson,*
     940 F.2d 465 (9th Cir. 1991) .......................................................... 28

*Foti v. City of Menlo Park,*
     146 F.3d 629 (9th Cir. 1998) .......................................................... 25

*Gammoh v. City of La Habra,*
     395 F.3d 1114 (9th Cir. 2005) ........................................................ 27

*Hassan v. City of New York,*
     804 F.3d 277 (3d Cir. 2015) ........................................................... 19

*Hunt v. City of Los Angeles,*
     601 F. Supp. 2d 1158 (C.D. Ca. 2009) ...................................... 25, 27

*Karim-Panahi v. Los Angeles Police Dep't,*
     839 F.2d 621 (9th Cir. 1988) .......................................................... 29

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
     416 F.3d 940 (9th Cir. 2005) .......................................................... 37

*Maya v. Centex Corp.,*
     658 F.3d 1060 (9th Cir. 2011) ........................................................ 21

*Nunez v. City of San Diego,*
     114 F.3d 935 (9th Cir. 1997) .......................................................... 35

*Ortez v. Washington Cnty., Or.,*
     88 F.3d 804 (9th Cir. 1996) ....................................................... 28, 29

*Real v. City of Long Beach,*
     852 F.3d 929 (9th Cir. 2017) .......................................................... 36

*Roulette v. City of Seattle,*
     97 F.3d 300 (9th Cir. 1996) ............................................................ 36

*Shroyer v. New Cingular Wireless Servs., Inc.,*
    622 F.3d 1035 (9th Cir. 2010) ................................................ 21

*Sun Savings & Loan Ass'n v. Dierdorff,*
    825 F.2d 187 (9th Cir. 1987) .................................................. 18

*Sunil Kumar v. Koester,*
    2023 U.S. Dist. LEXIS 128689 (C.D. Cal. July 24, 2023) ................................. 11

*Tennison v. Paulus,*
    144 F.3d 1285 (9th Cir. 1998) ................................................ 35

*Thornton v. City of St. Helens,*
    425 F.3d 1158 (9th Cir. 2005) ................................................ 28

*Tingley v. Ferguson,*
    47 F.4th 1055 (9th Cir. 2022) ................................................ 33

*U.S. v. Funds in the Amount of $239,400,*
    795 F.3d 639 (7th Cir. 2015) ................................................ 22

*US v. Wunsch,*
    84 F.3d 1110 (9th Cir. 1996) ................................................ 25

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ................................................ 37

*Watts v. Cnty. of Sacramento,*
    256 F.3d 886 (9th Cir. 2001) ................................................ 29

*Wilshire Courtyard v. Cal. Franchise Tax Bd.,*
    729 F.3d 1279 (9th Cir. 2013) ................................................ 22

*Wolfson v. Brammer,*
    616 F.3d 1045 (9th Cir. 2010) ................................................ 36

**STATE CASES**

*Hi-Voltage Wire Works Inc. v. City of San Jose,*
    12 P.3d 1068 (Ca. 2000) ................................................ 30

**OTHER CASES**

*Waln v. Dysart Sch. Dist.,*
    2022 WL 17544355 (9th Cir. Dec. 9, 2022) ................................................ 18

## US CONSTITUTIONAL PROVISIONS

Amendment XIV
    § 1............................................................................................................................ 28

## FEDERAL STATUTES

Title 42 U.S.C.
    § 1983................................................................................................................. 18, 28
    § 1985........................................................................................................................ 37

## FEDERAL RULES

Federal Rules of Civil Procedure
    Rule 11..................................................................................................................... 38
    Rule 12(b)(1)..................................................................................................... 1, 10, 21
    Rule 12(b)(6)......................................................................................................... 1, 10
    Rule 12(c)................................................................................................................. 18
    Rule 15..................................................................................................................... 37

## TREATISES / REVIEWS

    THE RUTTER GROUP: CIVIL PROCEDURE BEFORE TRIAL § 9.87 (2015) ............ 22
    Iowa Law Review, Vol. 92, No. 2 ............................................................................. 23

## OTHER AUTHORITIES

http://clerk.seattle.gov/~cfpics/cf_322573f.pdf ........................................................ 11

http://clerk.seattle.gov/~cfpics/cf_322573nn.pdf ...................................................... 31

http://clerk.seattle.gov/~cfpics/cf_322573pp.pdf ...................................................... 16

http://clerk.seattle.gov/search/clerk-files/322573 ..................................................... 16

http://seattle.legistar.com/View.ashx?M=F&ID=11651954&GUID=8BB5B94B-EB71-40C1-
    B5CF-D0A8D75D8877 ........................................................................................ 26

https://cohna.org/new-survey-analyzes-awareness-of-caste-in-the-us/ ....................... 14

https://council.seattle.gov/2020/02/04/sawant-community-members-celebrate-passage-of-city-
    council-resolution-opposing-religious-persecution-detention-camps-by-right-wing-
    regime-in-india/................................................................................................... 16

https://council.seattle.gov/2023/01/24/councilmember-sawant-and-south-asian-community-
    leaders-introduce-first-in-the-nation-legislation-to-ban-caste-discrimination/.................... 14

https://docs.google.com/document/d/1exszRVrkKogZQGW_croebiWthsCTDMXUupP9lt_Xp
    og/edit ...................................................................................................................... 23

https://docs.google.com/forms/d/e/1FAIpQLSffwpnXH_5o0-
    z90VoNVYnYyMhj3UnICtdsHVUcHZ79APBGEQ/viewform......................................... 15

https://mailchi.mp/seattle/have-you-experienced-caste-discrimination-or-
    islamophobia?e=[UNIQID.................................................................................................. 37

https://sawant.seattle.gov/my-letter-to-rep-pramila-jayapal-support-our-fight-to-make-seattle-
    the-first-city-to-ban-caste-discrimination/................................................................... 16

https://us19.campaign-archive.com/home/?u=bd9c3de67c9c8780c16467332&id=eb2c34586e  37

https://www.courtlistener.com/docket/65547809/102/sunil-kumar-ph-d-v-dr-jolene-
    koester/https://www.courtlistener.com/docket/65547809/102/sunil-kumar-ph-d-v-dr-
    jolene-koester/.................................................................................................................... 11

https://www.facebook.com/events/971630427348719/.............................................................. 12

https://www.merriam-webster.com/dictionary/caste .................................................................. 26

https://www.seattle.gov/civilrights/civil-rights-enforcement/new-laws-and-amendments/caste..26

Pro Se 15 2016                                                    Hon. Richard A. Jones

# I.      INTRODUCTION

Pursuant to Defendants' Motion to Dismiss (ECF-Dkt.11, "MTD"), Plaintiff respectfully submits this Opposition to Defendants' MTD. Plaintiff requests this Court to deny MTD and order Defendants to respond to Plaintiff's Complaint (ECF-Dkt.1, "Complaint") to answer for their Unconstitutional conduct. The Complaint challenges Constitutionality of the Seattle Anti Caste Discrimination Ordinance No. 126767, introduced as Council Bill 120511 (ECF-Dkt.12-1, "Ordinance"). Defendants move under FRCP 12(b)(1) and 12(b)(6) to dismiss an imaginary complaint they have made up—not the one before this Court. Defendants' MTD is premised upon selective reading of Complaint, mischaracterizes Plaintiffs' claims, and fails to recognize specific case law upon which those claims are based. Defendants have failed to demonstrate "beyond doubt" Plaintiff can prove "no set of facts entitling him to relief." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011).

Defendants argue there is no law against vegetarians whereas Plaintiff never said so. Plaintiff argues religious conduct of eating vegetarian food would be used for religious profiling and assigning a caste label to Plaintiff forcing him to either suppress vegetarian conduct against his religious beliefs, starve, or as he was ultimately forced to do – cancel his travel plans to Seattle University thereby missing the Alumni event he had planned to attend; see **Complaint ¶28-¶30**. Indeed, practice of eating vegetarian food as an identifier of people belonging to alleged "upper castes" was a very important consideration for Defendants who are members of Seattle City Council ("Council"), as well as to Defendants' collaborators, who devoted considerable time and

resources profiling Hindu-Americans for their dietary habits in a vituperative manner during public hearings related to passage of the Ordinance[1].

Void for Vagueness doctrine (1) guarantees ordinary people have fair notice; (2) guards against arbitrary or discriminatory enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). This Ordinance threatens Due Process rights because "uncertain meanings inevitably lead individuals to steer far wider of potentially prohibited speech than they would if meaning of policy was clear." *Grayned v. City of Rockford*, 408 US 104, 108 (1972) (quoting *Bagget v. Bullitt*, 377 US 360, 372 (1964)).

Just a few days ago, in a similar lawsuit against a newly instituted caste-discrimination policy at California State University (CSU), the Court, in denying Summary Judgment Motion by Defendants CSU, in its ruling dated July 25, 2023, stated "the word 'caste' is susceptible to numerous meanings," and allowed Plaintiff's void for vagueness claim to go to trial[2]. Court noted CSU had option to use "class or social status" to make their Policy neutral, instead they chose to use "caste." Court also allowed Plaintiff's Establishment Clause claim to proceed. *Sunil Kumar v. Koester*, 2023 U.S. Dist. LEXIS 128689 (C.D. Cal. July 24, 2023).

Those same arguments must apply here, and this Court should allow Establishment Clause and Due Process Clause claims to proceed. Plaintiffs in CSU lawsuit lost Equal Protection Clause claim due to unfortunate choice of words in their Motion where Plaintiffs argued against themselves by erroneously swapping impacted groups with non-impacted groups. Such error does not exist in this lawsuit. Plaintiffs in CSU lawsuit did not provide any example of religious conduct

---

[1] **Exhibit A with Declaration 5** Office of Seattle City Clerk - CF 322573 Document and Supporting Research: Equality Labs, Caste in the United States, (2018) ***"Upper" Caste Hindus are often vegetarian***. See http://clerk.seattle.gov/~cfpics/cf_322573f.pdf

[2] **Exhibit B with Declaration 6** Judgement on the Pleadings, Sunil Kumar, Ph. D. v. Dr. Jolene Koester, 2:22-cv-07550, (C.D. Cal. Jul 25, 2023) ECF No. 102. See https://www.courtlistener.com/docket/65547809/102/sunil-kumar-ph-d-v-dr-jolene-koester/

to allow Free Exercise Claim to move forward, but Plaintiff here clearly argues his practice of consuming only vegetarian food is religious conduct. This Court must thus allow Free Exercise Clause claim and Equal Protection Clause claim to proceed in addition to allowing Establishment Clause and Due Process Clause claims.

Finally, Plaintiff seeks leave to amend Complaint to incorporate facts that newly came to light in an online announcement made by Defendant Kshama Sawant, twelve days after Plaintiff's Complaint was filed[3]. Defendant Kshama Sawant has revealed new information and has divulged details capturing motives behind her actions. Specifically, she has attacked Hindu-American organizations which participated in public hearing including one of which Plaintiff is a member of, and with which Plaintiff was coordinating his efforts. Defendant Kshama Sawant has explicitly stated her ulterior motives for passing the Ordinance, and consequently Plaintiff would like to incorporate those new facts along with additional claims listing conspiracy by Defendants and their collaborators.

Another document by Defendant Kshama Sawant provides startling information listing identities of her collaborators and leads to the conclusion that every allegation of caste-based discrimination around US which has been mentioned in MTD as examples of "rampant" caste discrimination are not independent events but have all been accusations orchestrated by same set of small anti-Hindu activist collaborators of Defendant Kshama Sawant. Some of her key collaborators have also falsely portrayed themselves as belonging to "Dalit" caste.

Hindus, Indians, and South Asians have been singled out suggesting caste discrimination itself is something that, definitionally, can be practiced only by people of certain ethnicities. Under

---

[3] **Exhibit C with Declaration 7** Public hearing announcement on Official Seattle City Councilmember Facebook page of Defendant Kshama Sawant create by her on May 23, 2023. See https://www.facebook.com/events/971630427348719/

1  federal equal protection doctrine, laws are subject to strict scrutiny and will be invalidated if they

2  differentiate on their face between persons based on race or ethnicity as validated in context of

3  Affirmative Action by the June 2023 Supreme Court ruling against race conscious admission

4  policies at Harvard and UNC.

5      Local Government laws must comport with constitutional restrictions, whether imposed by

6  First or Fourteenth Amendments. Implementation of this Ordinance must similarly comport with

7  constitutional restrictions. Defendants define caste as "religiously sanctioned social structure of

8  Hinduism…" but fail to elaborate how or why this is an understanding shared by others. Since this

9  Ordinance impacts core constitutional rights, it can survive only if it meets most exacting judicial

10  scrutiny. Plaintiff has asserted proper facial challenge, and adequately alleged this Ordinance is

11  Unconstitutionally Vague, violates Equal Protection, Establishment, Free Exercise Clauses, and

12  Due Process Clauses.

## II.        FACTUAL BACKGROUND

14      Every American, starting from elementary schools, is taught caste is a terrible ancient

15  hierarchy practiced by Hindus in India and erroneously associate caste with Hinduism. Preying on

16  this false stereotype, Defendants legalized this Ordinance after a contentious public hearing in

17  which many Hindu-Americans including Plaintiff participated. While supporters of the bill were

18  given an exalted treatment (Defendants have admitted to relying on their reports), inputs of Hindu-

19  Americans were not given similar treatment and discarded while facing hostility from Defendants.

20  This Ordinance will lead to racial and religious profiling, targeting Hindu-Americans, presumption

21  of guilt on part of Hindu-Americans, and government overreach in form of requiring Hindus,

22  Indians, and South Asians to identify themselves by their religion and caste as this is the only way

23  this Ordinance can be enforced. Such requirements to identify themselves would clearly be

24  unconstitutional.

Pro Se 15 2016                                                    Hon. Richard A. Jones

A.      **Defendants describe Caste as synonymous with Hinduism in a demeaning manner with a discriminatory and hostile intent.**

Defendants have linked caste with Hinduism. The Ordinance defines caste as "a system of rigid social stratification [...] sanctioned by custom, law, or religion." The only religion to which Defendants linked caste during public hearing was Hinduism. A recent survey conducted in March 2023 by Coalition of Hindus of North America (CoHNA), confirms that Americans equate caste with Hinduism[4]. To the average American, caste is clearly associated with India and therefore Hinduism. Attempting to soften this association by claiming caste exists across geographies from Japan to Africa is a dishonest attempt to obfuscate facts presented before this court as Defendants never relied on any input from people of Japanese or African origin. Not one source listed under "Research" on Council's website covers any other part of world other than South Asia. In contrast, every single "Research" document links caste with South Asia, targeting Hinduism with hostile comments[5]. Defendant Kshama Sawant made it clear that people of South Asian origin were being targeted by the Ordinance when she stated in her speech on January 24, 2023, while introducing the bill, "With over a 167,000 people of South Asian origin living in Washington, largely concentrated in the Greater Seattle area, the region must address caste discrimination and not allow it to remain invisible and unaddressed[6]."

---

[4] **Exhibit D with Declaration 8** CoHNA (a grassroots advocacy group representing Hindu-Americans) Caste Survey was based on a YouGov US national sample of 1,500 responses. See https://cohna.org/new-survey-analyzes-awareness-of-caste-in-the-us/

[5] **Exhibit E with Declaration 9** Seattle City Clerk Documents and Research supporting Council Bill 120511, relating to caste discrimination. See http://clerk.seattle.gov/search/clerk-files/322573

[6] **Exhibit F with Declaration 10** Seattle City Council News Release - Councilmember Sawant Proposes Legislation Against Caste Discrimination, January 24, 2023. See https://council.seattle.gov/2023/01/24/councilmember-sawant-and-south-asian-community-leaders-introduce-first-in-the-nation-legislation-to-ban-caste-discrimination/

1    Indians or South Asians, especially Hindu-Americans including Plaintiff, consider caste an

2    old colonialist divisive libel and a highly insulting slur like the "n-word". Caste is a dog whistle

3    Defendants have latched on to, without providing any proof of "rampant" caste discrimination

4    claims in US. The only events Defendants cite are those engineered by Equality Labs, ironically,

5    a capitalist (for-profit) collaborator of Defendant Kshama Sawant which makes money by claiming

6    to help mitigate caste discrimination.

7    A few days after Plaintiff's Complaint was filed, on May 23, 2023, Defendant Kshama

8    Sawant announced another public hearing focused on alleged discrimination on account of caste

9    and Muslim identity. Three versions were announced - One was on Official Facebook page of

10   Defendant Kshama Sawant containing language showing biased assumptions (*See Page 12,*

11   *Footnote 3*). In two other versions, one sent as an email blast, and another made together with

12   various activist groups, Defendant Kshama Sawant has used vituperative language against Hindu-

13   Americans. In the announcement jointly made with other groups, Defendant Kshama Sawant

14   attacked CoHNA's inputs, branding it "right wing organization."[7] Plaintiff is a member of CoHNA

15   and this is a direct attack on Plaintiff. In contrast, the same document praised "Muslim activists"

16   as her collaborators in passing the Ordinance highlighting hostile treatment given by Defendants

17   to Hindus vis-à-vis favorable treatment given to Muslims. Defendant Kshama Sawant described

18   her motives behind the Ordinance as "an offensive victory against right wing everywhere."

19   Clearly, the entire exercise is nothing but a political and religious attack by those who oppose

20   Hinduism. Defendant Kshama Sawant's statements evidencing hostility towards Hindu-American

21   participants was on display during public hearing too proving the public hearing was not fair to

22

23   _____

24   7 **Exhibit G with Declaration 11** Joint Announcement with other activist groups.  See
     https://docs.google.com/forms/d/e/1FAIpQLSffwpnXH_5o0-
     z90VoNVYnYyMhj3UnICtdsHVUcHZ79APBGEQ/viewform

Hindu-Americans. An email from CoHNA protesting Defendant Kshama Sawant's hostile attack characterizing CoHNA as, "Their agenda is extremely right wing and extremely aligned with the regime that is currently in power in India" can be found on Council's website under "Research"[8]. In another communication dated February 17, 2023, while Council was still taking inputs from public, Defendant Kshama Sawant sent a letter seeking support for the Ordinance to Representatives Pramila Jayapal and Ro Khanna in which she described CoHNA as "right-wing fundamentalists."[9] This is clear evidence Defendants were already biased against Hindu-Americans and displayed their biases in public, hence Hindu-Americans stood no chance of getting a fair hearing before Council. Plaintiff is a member of CoHNA and his inputs to Council during public hearing process was sent in coordination with CoHNA. Defendant's hostile attacks on CoHNA caused injury to Plaintiff, depriving Plaintiff of an opportunity to participate as an equal in public hearing conducted by Council.

B.   **Defendants have Discriminatory Animus and an Invidious Motive.**

Defendants claim they have no legislative animus and were unaware of offensive statements made by Equality Labs. This is false since Defendant Kshama Sawant has a long history of working with Equality Labs and has published political comments by Equality Labs on official Council webpage as early as February 4, 2020[10]. Additionally, Defendant Kshama Sawant's letter to Representative Pramila Jayapal refers to the report by Equality Labs as justification for passing

---

[8] **Exhibit H with Declaration 12** Documents and Research Main Page. See http://clerk.seattle.gov/search/clerk-files/322573 The specific email can be accessed from this page and is linked with the text 'Councilwoman Kshama Sawant comments about CoHNA.' See http://clerk.seattle.gov/~cfpics/cf_322573pp.pdf

[9] **Exhibit I with Declaration 13** Letter to Pramila Jayapal dated February 17, 2023. See https://sawant.seattle.gov/my-letter-to-rep-pramila-jayapal-support-our-fight-to-make-seattle-the-first-city-to-ban-caste-discrimination/

[10] **Exhibit J with Declaration 14** Sawant, Community Members Celebrate… See https://council.seattle.gov/2020/02/04/sawant-community-members-celebrate-passage-of-city-council-resolution-opposing-religious-persecution-detention-camps-by-right-wing-regime-in-india/

this Ordinance. During public hearing, several Hindu-Americans brought negative statements of Equality Labs to Council's attention. Thus, Defendants cannot dissociate themselves from hateful statements of Equality Labs.

Defendant Kshama Sawant's long standing association with Equality Labs and her knowledge of their hostility towards Hindu-Americans can be seen from the fact that on February 4, 2020, Defendant Kshama Sawant passed a Seattle City resolution, the first by a city or legislative body in US, denouncing National Register of Citizens (NRC)/Citizenship Amendment Act (CAA) enacted by Government of India. CAA would have provided amnesty and fast-track citizenship to refugees in India fleeing religious persecution in Afghanistan, Bangladesh, and Pakistan. Defendant Kshama Sawant compared CAA to Nuremberg laws of Third Reich in 1930's Germany by falsely claiming CAA/NRC would "strip hundreds of millions of Muslim people, poor people, and marginalized communities of their Indian Citizenship and all democratic rights." Defendant Kshama Sawant was joined by Thenmozhi Soundarajan, Executive Director of Equality Labs, who was quoted as saying "These genocidal projects happen in the shadows and this resolution highlights the significance of Seattle City Council standing up for South Asian minorities, Muslims, and caste oppressed communities." (*See Page 16, Footnote 10).*

## III.    STATEMENT OF ISSUES

There is a single issue for this Court to resolve—whether facts Plaintiff alleges sufficiently state a "plausible" ground for relief or if Defendants have shown "beyond doubt" that Plaintiff "can prove no set of facts in support of the claim" that would entitle Plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Iqbal, 556 U.S. at 678; Aguayo, 653 F.3d at 917. Because Plaintiff has alleged plausible grounds for relief, Defendants MTD should be denied in entirety.

1

## IV.    LEGAL ARGUEMENTS

2          Courts must take all facts in complaint as true, make all reasonable inferences in favor of

3   plaintiffs, and determine whether complaint states a plausible claim for relief. *Ashcroft v. Iqbal*,

4   556 U.S. at 678. A claim is facially plausible when a plaintiff pleads "factual content allowing the

5   Court to draw reasonable inference that defendant is liable for misconduct alleged."

6          US law allows individuals who believe their constitutional rights have been violated to

7   bring a civil action against government to recover damages sustained because of that violation.

8   Specifically, 42 USC §1983 "provides a cause of action for deprivation of **any** rights, privileges,

9   or immunities secured by Constitution and laws by **any** person acting under color of **any** statute,

10  ordinance, regulation, custom, or usage, of **any** State or Territory." *Gomez v Toledo,* 446 US 635,

11  638 (1980). Under 42 USC § 1983, you may sue state or local officials for "deprivation of any

12  rights, privileges, or immunities secured by Constitution and [federal laws]."  Under *Bivens v. Six*

13  *Unknown Named Agents of Federal Bureau of Narcotics,* 403 US 388 (1971).

14         Under FRCP 12(c), judgment on pleadings "is proper only when there is no unresolved

15  issue of fact, and no question remains the moving party is entitled to a judgment as a matter of law."

16  *Butler v. Resurgence Financial, LLC*, 521 F. Supp. 2d 1093, 1095 (C.D. Ca. 2007). "It must

17  appear beyond doubt that plaintiff can prove no set of facts in support of his claim which would

18  entitle him to relief." (Citing *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.

19  1987)).  "[T]he allegations of non-moving party are accepted as true, and all inferences  reasonably

20  drawn from those facts must be construed in favor of responding party."

21         Courts must evaluate strict scrutiny order of review to ensure Defendants have a

22  compelling interest, and the Ordinance is narrowly tailored using least restrictive means. This

23  Court must accept Plaintiff's well-pleaded allegations as true and view all facts in light most

24  favorable to Plaintiff when ruling on a Rule 12(b)(6) MTD. *Waln v. Dysart Sch. Dist.*, No. 21-

15737, 2022 WL 17544355, at *8 (9th Cir. Dec. 9, 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A.    **Defendants' disregard Plaintiffs' well-pled allegations.**

The term "caste" is full of negative connotations and considered a slur word by majority of Hindu-Americans. Usage of caste in any law leads to stigmatization and stereotyping of specific groups like Hindu-Americans. Despite this clear violation of First Amendment rights, Defendants' fail to justify this discriminatory Ordinance. But taking Complaint's allegations as true, as Court must at this stage, Plaintiff states a plausible claim for each cause of action.

None of Defendants' arguments in MTD are convincing as Plaintiff has stated plausible claims. Whether Ordinance is narrowly tailored to achieve a compelling purpose is to be determined after discovery and factfinding, not on a MTD where Plaintiff's allegations must be taken as true. *Ashcroft v. Iqbal*, 556 U.S. at 678 (pleading standard is a plausibility standard, not a probability standard). See also *Hassan v. City of New York*, 804 F.3d 277, 306 (3d Cir. 2015), as amended (Feb. 2, 2016) (noting burden of producing evidence to overcome heightened scrutiny's presumption of unconstitutionality belonged to city, and where there was a race-based affirmative action plan subject to strict scrutiny, city had to meet its burden "after its MTD"). See also *Duronslet v. Cnty.* of Los Angeles, 266 F. Supp. 3d 1213, 1223 (C.D. Cal. 2017) ("[T]he Court finds it premature to determine either level of scrutiny to apply or whether County's policy can withstand such scrutiny. Both are fact-dependent inquiries that are unsuitable for resolution at pleading stage."). Defendants cannot meet their immense burden under strict scrutiny. See *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

Defendants argue Ordinance applies to everyone, instead it is tailored to target South Asians, specifically Hindu-Americans. Defendant Kshama Sawant, admitted during introduction of the Ordinance in Council that reason behind Ordinance was the existence of 167,000 South

1    Asians concentrated in Greater Seattle. This Ordinance is not caste neutral; it is caste mandatory.

2    If Defendants intent was to prohibit all forms of discrimination based on inherited class or social

3    status, they could have simply said so.

4        Plaintiff's Complaint makes these points clear. Complaint ¶1 describes a Councilmember

5    bringing up that the term "caste" is vague. Complaint ¶2 provides both the claim and fact

6    supporting the claim Defendants targeted and demonized South Asians specifically Indians and

7    Hindus, Complaint ¶3 describes how Defendants explicitly tied caste to Hinduism and India and

8    provides words they used to make the connection, Complaint ¶52 and ¶65 state Defendants relied

9    on Equality Labs report as their primary source, Complaint ¶17 describes how "Defendants have

10   intentionally created a discriminatory law singling out South Asians," Complaint ¶62 describes

11   how Equality Labs (upon whose information Defendants relied to create the Ordinance) demonizes

12   religious conduct of eating only vegetarian food, Complaint ¶21 once again articulates "caste" is

13   vague, Complaint ¶20 illustrates lack of neutrality by drawing  comparison with similarly situated

14   groups such as Native Americans. Complaint ¶30 describes injury caused to Plaintiff by forcing

15   to cancel his appearance at Seattle University directly because of chilling effects caused by

16   Defendants. These points clearly ensure Plaintiff meets Twombly and Iqbal pleading standards.

17   B.    **Plaintiff has Credible Standing.**

18       Defendants argue Plaintiff lacks standing. Defendants do not cite to any authority that

19   Plaintiff's allegations do not state legally cognizable causes of action. Because Plaintiff's Due

20   Process challenge implicates First Amendment rights, Plaintiff is entitled to a relaxed injury in fact

21   requirement. *Arce v. Douglas*, 793 F.3d at 987-88. Plaintiff has direct standing to assert all other

22   claims and has included all allegations to establish claims here. The standing inquiry looks to

23   whether litigant is entitled to have the court decide merits of the dispute. *Warth v. Seldin*, 422 U.S.

24   490, 498 (1975).

Hon. Richard A. Jones

1          Under FRCP 12(b)(1) "For purpose of ruling on a MTD for want of standing, both the trial

2    and reviewing courts must accept as true all material allegations of the complaint and must

3    construe the complaint in favor of complaining party." *Maya v. Centex Corp*., 658 F.3d 1060,

4    1068, 1070 (9th Cir. 2011). See also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)

5    ("For a MTD, we 'presum[e] that general allegation [of injury] embrace those specific facts that

6    are necessary to support the claim.") At pleading stage, "general allegations embrace those specific

7    facts that are necessary to support the claim." Here, Plaintiff has alleged that his religious belief-

8    based conduct of eating only vegetarian food will be used to profile and target him. Plaintiff has

9    pointed out Defendants relied heavily on a report by Equality Labs to formulate the Ordinance.

10   That report declared consumption of vegetarian food as a marker for targeting Hindu-Americans.

11   According to the report, vegetarianism (sic) "is deeply linked to Caste mandates and religious

12   dictates." Combined with Council's website attributing caste to Hinduism, and Defendant Kshama

13   Sawant's belligerent public statements about "offensive" victory, naming of CoHNA as a target,

14   and collaboration with powerful politicians like Representative Pramila Jayapal, Plaintiff's fear

15   that he would be a target is genuine, and his cancellation of travel arrangement to attend a Seattle

16   University alumni event and his foregoing of opportunity to attend this event amount to injury in

17   fact.

18         A MTD under Rule 12(b)(6) cannot be granted unless it appears to a legal certainty that

19   plaintiffs have not alleged a "cognizable legal theory," or facts sufficient "to support a cognizable

20   legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010).

21   Plaintiffs' complaint need only state a "plausible" entitlement to relief, which is not "akin" to

22   probable and must be allowed to proceed "even if it strikes a savvy judge that actual proof of those

23   facts is improbable, and that a recovery is very remote or unlikely." *Bell Atlantic Corp. v. Twombly*,

24   550 U.S. 544, 556, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported

1  by showing any set of facts consistent with allegations in the complaint." Id. at 563. There is no

2  "probability requirement" at pleading stage. Id. at 556. Instead, Plaintiffs must allege facts

3  sufficient to "raise a reasonable expectation that discovery will reveal evidence" that plaintiffs are

4  entitled to relief.

5          Here, Plaintiffs' pleadings are entitled to additional deference because facts underlying

6  Defendants' arguments regarding standing are disputed and go directly to merits. THE RUTTER

7  GROUP: CIVIL PROCEDURE BEFORE TRIAL § 9.87 (2015) ("Most courts deny Rule 12(b)(1)

8  motions where defendant disputes facts underpinning subject matter jurisdiction, and those facts

9  are 'inextricably intertwined' with merits of plaintiff's claims." (citing *Wilshire Courtyard v. Cal.*

10 *Franchise Tax Bd.*, 729 F.3d 1279, 1284 n.4 (9th Cir. 2013)) See also *U.S. v. Funds* in the Amount

11 of $239,400, 795 F.3d 639, 642-43, 647 (7th Cir. 2015) ("At pleading stage, a plaintiff need only

12 allege, not prove, facts establishing standing"; district court erred in requiring plaintiff to show

13 that claim is "legitimate.").

14         Contrary to Defendants' arguments, it is axiomatic in federal court that plaintiffs need not

15 commit a discriminatory act forbidden by law before having standing to challenge that law. US

16 Supreme Court has ruled that "[o]ur analysis must begin with the recognition that, where

17 threatened action by government is concerned, we do not require a plaintiff to expose himself to

18 liability before bringing suit to challenge the basis for the threat – for example, the constitutionality

19 of a law threatened to be enforced." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29

20 (2007). See also *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 931 (9th Cir.

21 2008).

22         The relevant inquiry is whether government's actions "would chill or silence a person of

23 ordinary firmness from future First Amendment activities." *Mendocino Env't. Ctr. v. Mendocino*

24 *Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Here, Defendants' actions are likely to chill a person

1    of ordinary firmness's travel plans and freedom of movement. Defendants argue because no caste

2    discrimination charges are likely to be filed against Plaintiff, there is no standing. The question is

3    not whether charges were filed, rather relevant question is whether Defendants' actions were

4    reasonably likely to deter Plaintiff from engaging in protected activity. *Coszalter v. City of Salem*,

5    320 F.3d at 976. Threat of charges of potential caste discrimination will lead to Plaintiffs loss of

6    employment and reputation is sufficiently and obviously chilling.

7        Plaintiff has faced second form of injury by being stigmatized and denied equal

8    treatment. Although Supreme Court does not generally consider stigmatization for standing

9    purposes, it does so under certain circumstances, specifically when an individual is denied equal

10   treatment. *Stigmatic Harm and Standing*, Thomas Healy, Iowa Law Review, Vol. 92, No. 2, p.

11   417, 2006, Seton Hall Public Law Research Paper No. 895194. ("In *Allen* itself, the Court stated

12   that stigmatic harm would support standing for plaintiffs who were personally denied equal

13   treatment.")[11] Attacks on CoHNA of which Plaintiff is a member constitutes an individual attack

14   on Plaintiff too, and these attacks are based on stigmatization of Plaintiff's religion leading to lack

15   of equal treatment of Plaintiff who must now guard against becoming target of religious profiling

16   considering Defendant Kshama Sawant's offensive attacks on Hindu-Americans in her public

17   FAQ on her Official Letterhead as Seattle City Councilmember, alongside her other belligerent

18   statements which must be viewed as threats[12].

---

[11] **Exhibit K with Declaration 15** Stigmatic Harm and Standing. See
https://papers.ssrn.com/sol3/papers.cfm?abstract_id=895194

[12] **Exhibit L with Declaration 16** Public FAQ On Defendant Kshama Sawant's Official Letterhead threatening
Hindu-Americans. See
https://docs.google.com/document/d/1exszRVrkKogZQGW_croebiWthsCTDMXUupP9lt_Xpog/edit

1    C.    **Impact on Core Constitutional Rights.**

2         While race and gender or sexual-orientation discrimination are terms readily

3    understandable in US, caste is not. Because the Ordinance fails to define caste clearly, it is

4    unconstitutionally vague. It also violates Equal Protection Clause because it treats American

5    citizens of Hindu religion, as well as those from India and South Asia, differently than others.

6         In *D.W. v. Raufer,* 839 F. App'x 723 (3d Cir. 2020), substantial evidence supported US

7    Citizen and Immigration Services' (USCIS) determination in denying application for asylum based

8    on applicants' status in one of the lowest castes in India's caste system… applicant was educated

9    and skilled in dental medicine, applicant had recent trip to India, India had affirmative action

10   program and prohibition on discrimination. USCIS did not violate applicant's due process rights

11   by considering articles showing lower caste individuals achieving success and societal respect in

12   metropolitan areas without allegedly providing opportunity to rebut.

13   D.    **The Ordinance is Unconstitutionally Vague.**

14        Plaintiff sufficiently alleges this Ordinance is vague because a reasonable person would

15   not understand what it prohibits and because it risks arbitrary and discriminatory enforcement. "A

16   statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide

17   people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

18   Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v.

19   Colorado,* 530 U.S. 703, 732 (2000). Vagueness is of special concern in First Amendment context

20   because when a vague regulation "abut[s] upon sensitive areas of basic First Amendment

21   freedoms, it operates to inhibit exercise of [those] freedoms." *Grayned v. City of Rockford*, 408

22   U.S. 104, 109 (1972). Accordingly, a law that reaches protected expression must contain "a greater

23   degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

24

1      Because this Ordinance contains no definition of unacceptable or inappropriate acts that

2   may result in caste discrimination and do not carry any reasonably objective plain meaning, it fails

3   to provide Plaintiff and others with "fair warning" of what kinds of discrimination the Ordinance

4   prohibits. Grayned, 408 U.S. at 108. The Ordinance's opacity results in a "chilling effect on the

5   exercise of First Amendment freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir.

6   1998); see also *US v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996) (invalidating as

7   unconstitutionally vague a statute that prohibited attorneys from engaging in "offensive

8   personality").

9      This Ordinance is unconstitutionally vague because no one can define caste such that it

10   falls within categories of nationality, race, ethnicity, or religion. In these circumstances,

11   government laws or policies are particularly susceptible to facial attack. See, e.g., *Johnson v. U.S.*,

12   576 U.S. 591, 637 n.2 (2015) ("A void-for-vagueness challenge is a facial challenge.").   A

13   vagueness challenge is "rooted in basic guarantees of due process." *Hunt v. City of Los Angeles*,

14   601 F. Supp. 2d 1158, 1169 (C.D. Ca. 2009). Indeed, "[v]ague laws offend several important

15   values." (Quoting *Grayned v. City of Rockford*, 408 U.S. 104 (1972)). They "trap the innocent by

16   not providing fair warning," present risk of "arbitrary and discriminatory enforcement …. [and]

17   impermissibly delegate basic policy matters" to those responsible for enforcement "on an ad hoc

18   and subjective basis, with attendant dangers of arbitrary and discriminatory application." Grayned,

19   408 U.S. at 108-09. Importantly, where, as here, a vague policy encroaches "upon sensitive areas

20   of basic First Amendment freedoms, it operates to inhibit exercise of [those] freedoms." (Quoting

21   *Cramp v. Board of Public Institution*, 368 U.S. 278, 287 (1961)).

22      It is impossible for Plaintiff or anyone else to predict what Defendants construe as caste

23   discrimination. Officials enforcing this Ordinance may even change their mind arbitrarily on

24   whether a particular incident constitutes caste discrimination or not depending on ethnicity and

ancestry of parties involved. This does not meet "greater degree of specificity" required to give Plaintiff fair warning about whether their actions may be punished for alleged caste discrimination. Smith, 415 U.S. at 573.

Defendants argue their Ordinance does not target any nationality, race, ethnicity, or religion. However, Defendants fail to explain how one responsible for enforcement of this Ordinance can distinguish caste discrimination from race, ethnicity, or religious discrimination. Plaintiff is left to wonder since caste is not defined. The only way for Council to implement this Ordinance will be to require individuals to declare their religious and caste affiliations, an act that is unconstitutional. If the law maker does not understand "caste", neither can the layperson understand what caste means and what constitutes caste discrimination. Simply stating that caste is a Hindu "hierarchy" and identifying "caste systems" located in India does not define what caste and caste discrimination is under the Ordinance[13].

Third, Defendants claim the Ordinance is neutral toward, and unrelated to, religion. Defendants have used Merriam-Webster dictionary to create their definition of caste[14]. But Merriam-Webster's first (and primary) definition of caste is "one of the hereditary social classes in Hinduism that restrict the occupation of their members and their association with members of other castes.[15]" Thus, Defendants direct the community to the very place where, contrary to Defendant's argument, caste is defined as associated with a religion and has multiple definitions.

---

[13] **Exhibit M with Declaration 17** Council's Definition of Caste, copied from Merriam-Webster dictionary – Definition (3) of Caste. See https://www.seattle.gov/civilrights/civil-rights-enforcement/new-laws-and-amendments/caste

[14] **Exhibit N with Declaration 18** Memorandum to Seattle City Council from Asha Venkataraman, Analyst/Central Staff dated February 16, 2023, providing background information on protected classes and caste as defined by the *Merriam-Webster dictionary*. See http://seattle.legistar.com/View.ashx?M=F&ID=11651954&GUID=8BB5B94B-EB71-40C1-B5CF-D0A8D75D8877

[15] **Exhibit O with Declaration 19** Merriam Webster Dictionary's *Primary/First* definition of caste includes: (1) "one of the hereditary social classes in **Hinduism** that restrict the occupation of their members and their association with members of other castes"; and *Secondary*: (2) "a division of society based on differences of wealth, inherited rank…" (3) "a system of rigid social stratification…"   See https://www.merriam-webster.com/dictionary/caste

Pro Se 15 2016                                                      Hon. Richard A. Jones

1   Caste, under the first and primary dictionary definition, applies only to historical Hindu castes (of

2   which there are thousands), thus, Defendants are targeting only members of Hindu faith as inherent

3   discriminators by birth.

4         No court anywhere has endorsed an anti-discrimination law directed to a class of

5   purported discriminators rather than a class discriminated against. Surely Defendants cannot

6   enforce an Ordinance against prohibited conduct without identifying conduct the Ordinance

7   proscribes. Merely saying caste is not enough, particularly where, as here, the Ordinance

8   implicates significant First Amendment concerns. See, e.g., *Gammoh v. City of La Habra*, 395

9   F.3d 1114, 1119 (9th Cir. 2005) ("A greater degree of specificity and clarity is required when First

10   Amendment rights are at stake").

11        "Caste" is so vague that even the Indian government does not attempt to define it. Instead, it

12   has taken a pragmatic approach of providing a laundry list of communities around India which

13   need to be uplifted based on socio-economic factors and geographic locations among other

14   conditions.[16] Academic journals too describe "caste" in a wide variety of ways and an online search

15   of "difficult to define caste" and "impossible to define caste" show several academic publications

16   strengthening Plaintiff's claims.

17        Despite obvious issues defining caste, Defendants maintain caste is understandable to people

18   of ordinary intelligence. But the dictionary alone includes four definitions, confirming there is no

19   single definition of caste, much less one that is understandable to people of ordinary intelligence.

20   Hence, this Ordinance does not provide any fair notice of prohibited conduct as there can be no

21   fair notice of what is prohibited if the Ordinance does not define caste. See Hunt, 601 F. Supp. 2d

22   at 1171 (holding ordinance that failed "to provide guidelines to be used by officials as they make

23

24   
---
[16] **Exhibit P with Declaration 20** Ministry of Social Justice & Empowerment, Government of India, State wise List
of Scheduled Castes. See https://socialjustice.gov.in/common/76750

1   [enforcement] decisions" as "permit[ting] arbitrary enforcement and run[ning] afoul of void-for-

2   vagueness doctrine").

3   E.      **The Ordinance Violates the Equal Protection Clause.**

4           Fourteenth Amendment provides "[n]o state shall…deny to any person within its

5   jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The purpose of Equal

6   Protection Clause of Fourteenth Amendment is to "secure every person within state's jurisdiction

7   against intentional and arbitrary discrimination, whether occasioned by express terms of a statute

8   or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield*

9   *Twp.*, 247 U.S. 350, 352 (1918). Pursuant to 42 U.S.C. § 1983, a plaintiff alleging a violation of

10  equal protection must plead that defendants, acting under color of state law, deprived him of rights

11  secured by Constitution or federal statutes. *Ortez v. Washington Cnty.*, Or., 88 F.3d 804, 810 (9th

12  Cir. 1996). Plaintiff must show that defendant "acted in a discriminatory manner," that

13  discrimination was "intentional," and that it occurred because of his membership in a protected

14  class. *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991); *Thornton v. City*

15  *of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). Intentional race discrimination violates "equal

16  protection unless narrowly tailored to serve a compelling state interest." *Alaska v. EEOC*, 564 F.3d

17  1062, 1068 (9th Cir. 2009).

18          The "Clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Plyler*

19  *v. Doe*, 457 U.S. 202, 216 (1982). Consequently, "the Constitution neither knows nor tolerates

20  classes among citizens." *Romer v. Evans*, 517 U.S. 620, 623 (1996). "This principle embodies a

21  commitment to neutrality where rights of individual persons are at stake." *Golinski v. Office of*

22  *Personnel Mgmt.*, 824 F.Supp.2d, 968, 981 (N.D. Ca. 2012). "It is because of this commitment to

23  neutrality that legislative provisions which arbitrarily or irrationally create discrete classes cannot

24

withstand constitutional scrutiny." (Citing Romer, 517 U.S. at 623); see also *Al Saud v. Days*, 50 F.4th 705, 709-10 (9th Cir. 2022).

"[A]ny official action that treats a person differently on account of his race or ethnic origin is inherently suspect." *Fisher v. Univ. of Tex.*, 570 U.S. 297, 310 (2013). Where government action treats an individual differently based of race, religion, ethnicity, or national origin, strict scrutiny is applied; *Johnson v. Calif.*, 543 U.S. 499, 505 (2005); *Adarand Const., Inc. v. Pena*, 515 U.S. 200, 227 (1995); *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). Supreme Court "insist[s] on strict scrutiny in every context, even for so-called 'benign' racial classifications, such as race-conscious university admissions policies, race-based preferences in government contracts, and race-based districting intended to improve minority representation." Johnson, 543 U.S. at 505; see also Al Saud, 50 F.4th at 709-710 "A municipality may be held liable under § 1983 if plaintiff proves that a government employee committed alleged violation pursuant to a formal government policy or a 'longstanding practice or custom which constitutes "standard operating procedure" of local government entity.'" *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). See also Ortez, 88 F.3d at 811 (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988), and noting that a "claim of municipal liability under section 1983 is sufficient to withstand a MTD even if the claim is based on nothing more than a bare allegation that actions of individual municipal employees conformed to official policy, custom, or practice").

Whether this Court accepts Plaintiffs' argument or that of Defendants, the test to be applied is same: the Ordinance must be narrowly tailored to serve a compelling government interest because all those categories are considered suspect classes and the Ordinance burdens Plaintiffs' constitutional rights. See, e.g., Ball, 254 F.3d at 823 ("If the statute employs a suspect class (such

1    as race, religion, or national origin) or burdens exercise of a constitutional right, the court must

2    apply strict scrutiny ….").

3        This Ordinance still amounts to a "benign" suspect classification that targets individuals

4    from India and South Asia, as well as those from "similarly affected groups" (whatever that phrase

5    may mean), to protect them[17]. Defendants impose a burden on, and single out, individuals based

6    on race, ethnicity, or religion. Indeed, this Ordinance singles out Plaintiff and other Hindu-

7    Americans with stereotypes that they adhere to a caste system characterized as a racist and

8    inhumane system of discrimination and violence against others. Supreme Court held decades ago

9    that offering assistance to "perceived victims of 'social discrimination' does not justify a

10   classification that imposes disadvantages" upon others. See *Regents of Univ. of Calif. v. Bakke*,

11   438 U.S. 265, 310 (U.S. 1978). Yet, this Ordinance does exactly that. Stated more simply,

12   antidiscrimination laws are drawn to protect persons against discrimination, not to classify certain

13   groups as historic discriminators. Courts have recognized that discrimination includes making

14   "distinctions in treatment" by "show[ing] partiality (in favor of) or prejudice (against)" individuals

15   based upon their membership in a protected class. *Hi-Voltage Wire Works Inc. v. City of San Jose*,

16   12 P.3d 1068, 1082 (Ca. 2000).

17       Defendants must prove this Ordinance survives strict scrutiny as it is not "narrowly tailored

18   to serve" that interest. Ball, 254 F.3d at 823. In fact, there are few government actions that meet

19   strict scrutiny test. Here, Defendants recognize caste discrimination as a form of race or ethnicity

20   discrimination and therefore the Ordinance's purpose necessarily can be achieved through a lesser

---

[17] **ECF Document 12-1 Exhibit A to Cowart Declaration** The Ordinance contains many vague terms – "Caste and caste-like systems", "similar systems of inherited status", "similarly affected groups" without explaining what those caste-like or similar systems are.  See Page 1, 2

*Pro Se 15 2016*                                                                 Hon. Richard A. Jones

1    restrictive means through existing prohibition against ancestry, race, national origin, or ethnicity

2    discrimination.

3    F.    **The Ordinance Violates the Establishment Clause.**

4          While neutrality is compelled as between religious and secular groups, there must be "strict

5    adherence to 'principal of denominational neutrality . . .'" where, as here, one religion is treated

6    differently than all others (based on primary definition of caste in the dictionary used by

7    Defendants). *Adair v. England*, 183 F.Supp.2d 31, 48 (D.D.C. 2002) (quoting *Larson v. Valente*,

8    456 U.S. 228, 246-47 (1982)). This has been bedrock constitutional law for decades. See, e.g.,

9    *Epperson v. Arkansas*, 393 U.S. 97, 98 (1968) ("First Amendment mandates governmental

10   neutrality between religion and religion . . .. State may not aid or oppose any religion . . .. This

11   prohibition is absolute.")

12         This Ordinance violates Establishment Clause by defining contours of Hindu religion as

13   including a caste system, characterized as a racist and inhumane system of discrimination and

14   violence against others, and treats it differently than other religions. Where, as here, government

15   policy favors one religion over another, it is treated "as suspect and [Court must] apply strict

16   scrutiny in adjudging its constitutionality." Larson, 456 U.S. at 246. Defendants' argument that

17   the Ordinance is neutral toward religion necessarily fails and it therefore cannot survive strict

18   scrutiny. Caste inherently implicates religion because it is defined primarily as "one of the

19   hereditary social classes in Hinduism…" The purported interplay between caste and Hinduism is

20   widely recognized, including in literature upon which Defendants rely[18]. Defendants therefore

21   cannot regulate caste discrimination without implicating religious considerations. Since caste is

22

23   ───────────────────

24   [18] **Exhibit Q with Declaration 21** *India's Caste System manifests in Seattle… South Asian* caste system … is a
     hierarchical system dating back *thousands of years… originated from Hinduism in India*…  See
     http://clerk.seattle.gov/~cfpics/cf_322573nn.pdf

1   defined as a hereditary class within Hinduism, the Ordinance prohibiting caste discrimination

2   cannot be neutral toward religion. Defendants could easily avoid any implication of religious

3   discrimination, while wholly preserving a potentially laudable intent, by substituting for caste

4   religiously neutral terms like class or social status."

5        Defendants' reliance upon Torlakson to defeat this argument is misplaced. Torlakson

6   addressed whether California public school curriculum discriminated against Hindus based upon

7   its focus on, and lessons about, caste system. *California Parents for Equalization of Educational*

8   *Materials (CAPEEM) v. Torlakson*, 973 F.3d 1010, 1014-15 (9th Cir. 2020). Defendants exclude

9   9th Circuit's statement, "...Framework expressly acknowledges that all early civilizations had

10  social class systems. Hindu religion was thus not singled out for criticism of its caste or class

11  system" in concluding reasonable observers would not see it as having primary effect of

12  disparaging Hinduism.

13       Here, Plaintiff has articulated that Hindu religion has been singled out and targeted;

14  moreover, Defendants desire not to teach about origins of caste, but rather seek to define contours

15  of Hinduism and subject alleged perpetrators to punishment based upon what Defendants perceive

16  to be discrimination. On the other hand, assuming caste is inextricably linked with Hinduism, the

17  Ordinance can be viewed as impermissibly imposing unique burdens on members of Hindu faith.

18  But "the Establishment Clause means at least this: Neither a State nor Federal Government … can

19  pass laws which aid one religion, aid all religions, or prefer one religion over another." *Everson v.*

20  *Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947). No decision by any court anywhere has declared

21  any religion inherently discriminatory such that unique laws may be enacted against its followers

22  to prohibit discrimination that goes above and beyond anti-discrimination policies that apply to all

23  citizens with respect to protected classes.

24

1   No matter the angle, this Ordinance delves impermissibly into aspects of religious practice

2   because it extends specialized treatment based upon caste. Purpose of the Establishment Clause is

3   to prevent "intrusion of either [the church or the state] into the precincts of the other." *Lynch v.*

4   *Donnelly*, 465 U.S. 668, 672 (1984) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971),

5   overruled on other grounds by *Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407 (2022)).

6   Defendants Ordinance does the opposite. Accordingly, it cannot pass strict scrutiny as explained

7   above.

8   G.      **The Ordinance Violates the Free Exercise Clause.**

9           Free Exercise Clause prohibits government from defining any religion. This Ordinance

10  violates it by identifying caste as a protected class. First Amendment requires government

11  "proceed in a manner neutral toward and tolerant" of people's "religious beliefs." *Masterpiece*

12  *Cakeshop Ltd. v. Colo. C.R. Comm'n*, 138 S.Ct. 1719, 1731 (2018). In assessing whether a

13  government action violates Free Exercise Clause, courts begin by "evaluat[ing] the object of the

14  law." *Tingley v. Ferguson*, 47 F.4th 1055, 1085 (9th Cir. 2022). "If purpose of the law is to restrict

15  practices because of religious motivations of those performing the practices, the law is not neutral."

16  "The next step in evaluating a law for neutrality is to examine text of the law to determine if it is

17  neutral on its face." (Citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520,

18  533 (1993)). A law is not neutral if it "refers to a religious practice without a secular meaning

19  discernable from the language or context." (Quoting Church of Lukumi Babalu Aye, Inc., 508 U.S.

20  at 533). Thus, inclusion of caste as a "Protected Category" cannot be facially neutral because it

21  specifically refers to what Defendants and the dictionary claim is a religious practice of Hinduism;

22  see also Kennedy, 142 S.Ct. at 2422 (policy "is specifically directed at a religious practice."). To

23  survive strict scrutiny, government must demonstrate "its course was justified by a compelling

24

1    state interest and was narrowly tailored in pursuit of that interest." Kennedy, 142 S.Ct. at 2422

2    (citing Lukumi 508 U.S. at 546).

3            Defendants incorrectly cite Torlakson since 9th Circuit's ruling was clear that CAPEEM

4    had not alleged coerced conduct by quoting negative descriptions from curriculum contents. Here,

5    Plaintiff has clearly provided an example of coerced conduct forcing Plaintiff to cancel travel

6    arrangements to attend an alumni event at Seattle University, as the trip to Seattle would have

7    forced Plaintiff to change conduct related to religious belief-based vegetarian food habits in order

8    not to be accused of violating the Ordinance based on his caste affiliation. Forcing someone to

9    either change their vegetarian diet based on religious belief or cancel their trip to Seattle altogether

10   amounts to coerced conduct. The 9th Circuit ruled in Torlakson that to meet Free Exercise claim,

11   "An actual burden on the profession or exercise of religion is required." In this case, Plaintiff has

12   clearly alleged such a claim.

13           Even if the Court deems inclusion of caste in Ordinance serves a compelling interest, it is

14   not narrowly tailored to meet that interest. Defendants can accomplish the same goal without

15   imposing a chilling effect on free exercise rights of Hindu-Americans. The Ordinance could have

16   used neutral and generally defined terms like "inherited social status or class" to achieve this goal

17   of addressing discrimination based on social or economic status. But Defendants chose not to do

18   so. Instead, inclusion of caste crosses the line of what is permissible under Religion Clauses.

19           Because the Ordinance is not narrowly tailored, it cannot survive strict scrutiny. See, e.g.,

20   Lukumi, 508 U.S. at 546 ("[A] law restrictive of religious practice must advance interests of

21   highest order and must be narrowly tailored in pursuit of those interests. The compelling interest

22   standard that we apply once a law fails to meet Smith requirements is not watered down but really

23   means what it says."). Supreme Court's decision in Lukumi demonstrates why this Ordinance fails

24   here.

Lukumi did not reference a specific religious practice; rather, it generally proscribed something that could only be applicable to plaintiff. This Ordinance, however, is more specific – and thus more constitutionally egregious: it identifies a specific practice (caste discrimination) that Defendants claim is associated with Hinduism and India.

Looking to factors Supreme Court articulated in Mastercake confirms this Ordinance is neither neutral nor generally applicable. As with the prohibition at issue in Mastercake, historical background underlying this Ordinance and contemporaneous comments made by Defendants linking caste to Hinduism – demonstrate Defendants apply caste only to Hinduism and people of Indian or South Asian origin. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) (churches showed likelihood of success on merits of claim for preliminary injunction where statements made in connection with rules for attending religious services during Covid-19 pandemic could be seen as targeting Orthodox Jewish community).

This is confirmed by the dictionary definition of caste and lack of definition in the Ordinance – it can only be associated with Hinduism and people from India or South Asia. Such an impermissible singling out of just one religion fails to satisfy strict scrutiny test particularly where, as here, Defendants have multiple other alternatives to combat perceived discrimination in Seattle. Roman Catholic Diocese of Brooklyn, 141 S. Ct. at 66.

H.     **Plaintiff asserts a Proper Facial Challenge.**

Determining constitutionality of this Ordinance does not have to wait for an actual caste discrimination incident. Facial challenges address constitutionality of government action before an actual controversy occurs. See *Tennison v. Paulus*, 144 F.3d 1285, 1287 (9th Cir. 1998). Thus, "[a] plaintiff whose constitutional rights have not been violated may nevertheless bring a facial challenge to a law that implicates First Amendment." (Citing *Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997)). Rather than waiting for such a violation to occur, courts may address

1   government policies susceptible to a facial challenge to prevent harm to constitutional rights. See

2   *Real v. City of Long Beach*, 852 F.3d 929, 934 (9th Cir. 2017) (holding a plaintiff challenging city

3   zoning ordinance was not required to first apply for, and then be denied, a permit before bringing

4   a First Amendment facial challenge to the city zoning ordinance).

5           This has been recognized in this Circuit and elsewhere. See, e.g., *California Teachers Ass'n*

6   *v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001); *Roulette v. City of Seattle*, 97 F.3d 300,

7   305 (9th Cir. 1996); *Benezet Consulting LLC v. Secretary Commw of Pennsylvania*, 26 F.4th 580,

8   585 (3d Cir. 2022). The purpose of a facial challenge to constitutionality of government action is

9   to attack the action "itself as opposed to a particular application." *Doe v. City of San Diego*, 313

10  F. Supp. 3d 1212, 1217 (S.D. Ca. 2018) (quoting *City of Los Angeles v. Patel*, 576 U.S. 409, 409

11  (2015)). Facial attacks do not "raise questions of fact related to enforcement of statute in a

12  particular instance [,]" see Doe, 313 F. Supp. 3d at 1217, and "have been permitted "under a diverse

13  array of constitutional provisions." Patel, 576 U.S. at 409.

14          The Ninth Circuit applies "requirements of ripeness and standing less stringently in context

15  of First Amendment claims." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010); see also

16  *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003). Thus, Plaintiff or

17  others similarly situated, need not wait until they are harmed by the Ordinance before challenging

18  it. See Wolfson, 616 F.3d at 1058 (quoting *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006

19  (9th Cir. 2003)); 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3532.3 (3d ed.)

20  ("First Amendment rights of free expression and association are particularly apt to be found ripe

21  for immediate protection, because of the fear of irretrievable loss"). Plaintiff's claims are fit for

22  judicial decision because constitutionality of this Ordinance is a purely legal question and does not

23  require further substantial development.

24

Pro Se 15 2016                                                          Hon. Richard A. Jones

I.    **Plaintiff should be permitted to amend the Complaint.**

Plaintiff requests leave to amend the Complaint. Leave should be freely granted when justice requires. See FRCP. 15. Here, Defendants will not be prejudiced by any amendment. Leave to amend is routinely granted in similar situations. See, e.g., *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108-09 (9th Cir. 2003) (leave to plead fraud with particularity). Dismissal without leave to amend is generally "improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). That is not the case here.

Plaintiff intends to add new information revealed by Defendant Kshama Sawant after Complaint was filed as described in Facts section[19]. Based on this new information, Plaintiff also intends to include additional Defendants and additional claims of conspiracy to deprive Plaintiff's civil rights under 42 U.S.C § 1985 (3) - Conspiracy to interfere with civil rights and the violation of Plaintiff's Free Association rights since Defendant has admitted that the purpose of this Ordinance was really an "offensive" action against the "right-wing.[20]"

## V.    CONCLUSION

For all the foregoing reasons, Defendants' MTD should be denied in entirety, and judgement should be entered for Plaintiff. Alternatively, this Court should grant leave to amend the Complaint.

---

[19] **Exhibit Q with Declaration 22** Hostility towards Hindu-Americans while praising and giving preferential treatment to Muslim-Americans. See https://mailchi.mp/seattle/have-you-experienced-caste-discrimination-or-islamophobia?e=[UNIQID]

[20] **Exhibit Q with Declaration 22** Prior Posts dated May 23, 2023, and June 25, 2023, demonstrating conspiracy to use caste to target Hindu Americans. See https://us19.campaign-archive.com/home/?u=bd9c3de67c9c8780c16467332&id=eb2c34586e

## VI.    LOCAL CIVIL RULE CERTIFICATION

The undersigned hereby certifies that this memorandum contains 8,173 words as determined by Microsoft Word's word count, in compliance with the Local Civil Rule 7(e).

## VII.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this motion: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:              August 2, 2023
Signature of Plaintiff:       */s/ Abhijit Bagal*
Printed Name of Plaintiff:    ABHIJIT BAGAL (Plaintiff, *Pro Se*)
Address:                      125 Vista Brooke Drive, Morrisville, NC 27560
Phone: (919) 917-3839         Email: abebagal@gmail.com

1

## VIII.   CERTIFICATE OF SERVICE

2              I hereby certify that on August 2, 2023, I electronically filed the foregoing with the Clerk

3    of the Court using the CM/ECF electronic filing system, which will send notification of such filing

4    to all counsel of record.

5    Date of signing:                          August 2, 2023

6    Signature of Plaintiff:                   /s/ *Abhijit Bagal*

7    Printed Name of Plaintiff:                ABHIJIT BAGAL (Plaintiff, *Pro Se)*

8    Address:                                  125 Vista Brooke Drive, Morrisville, NC 27560

     Phone: (919) 917-3839                     Email: abebagal@gmail.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24